## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOSE CANSECO** | **CIVIL ACTION** |
| **VERSUS** | **NO: 24-1271** |
| **TSB VENTURES, LLC ET AL.** | **SECTION "H"** |

## <u>ORDER AND REASONS</u>

Before the Court is Defendant TSB Ventures LLC's Motion to Transfer Venue (Doc. 3). For the following reasons, the Motion is **DENIED**, and this matter is **REMANDED** for lack of subject matter jurisdiction.

## <u>BACKGROUND</u>

This matter arises out of a pair of settlement agreements between the parties and others. Plaintiff Jose Canseco entered into a settlement agreement with Defendants TSB Ventures, LLC ("TSB"); CA Recovery Master Fund, LLC; and Worachote Soonthornsima, in which he alleges the parties agreed that if the assets of another business—Kologik, LLC ("Kologik")—sold for more than $17.5 million then TSB would put $1.8 million of the amount it received from that sale in escrow for the payment of an incentive bonus to Plaintiff ("the Multiparty Agreement"). The Multiparty Agreement also incorporates the terms of another agreement, the Global Settlement Agreement ("GSA"), between Plaintiff, Defendants, Kologik, and various other parties. The GSA also provides for the setting aside of $1.8 million from the proceeds of the sale

1

of Kologik in order to satisfy Plaintiff's claim to an incentive bonus. Plaintiff alleges that the bonus is part of a compensation package agreement that he entered into with the majority owner of TSB to manage TSB and its investments. The two allegedly agreed that Plaintiff would be paid an exit bonus upon the successful exit of an investment made by TSB during Plaintiff's tenure as a manager. Plaintiff is a 2% member of TSB and its registered agent. TSB holds 51% of the membership interests in Kologik.

Plaintiff filed this action in the 22nd Judicial District Court seeking a declaratory judgment and writ of mandamus regarding his entitlement pursuant to the Multiparty Agreement to proceeds from TSB's collection of funds after the sale of Kologik. Just eight days later, Kologik filed for Chapter 11 bankruptcy in the Middle District of Louisiana. Defendant TSB then removed Plaintiff's claims to this Court pursuant to its bankruptcy jurisdiction.[1]

Now before the Court is Defendant TSB's Motion to Transfer this matter to the Middle District of Louisiana pursuant to either 28 U.S.C. §§ 1412 or 1404. Plaintiff opposes, arguing that this Court does not have bankruptcy jurisdiction over his claim.

## LEGAL STANDARD

Pursuant to 28 U.S.C. § 1412, "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." "'[T]he party moving for the

---

[1] Defendants CA Recovery Master Fund, LLC and Worachote Soonthornsima are not yet joined.

transfer must show by a preponderance of the evidence that the case should be transferred.'"[2] "'The "interest of justice" component of § 1412 is a broad and flexible standard which must be applied on a case-by-case basis. It contemplates a consideration of whether transferring venue would promote the efficient administration of the bankruptcy estate, judicial economy, timeliness, and fairness.'"[3]

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."[4] District courts possess broad discretion when deciding whether to order a transfer of venue.[5] The Fifth Circuit has held that in the interest of respecting forum choices by plaintiffs, a party moving for transfer must show "good cause."[6]

## LAW AND ANALYSIS

In opposition to Defendant TSB's request for transfer, Plaintiff argues that this Court lacks jurisdiction over his claim. Accordingly, this Court must determine at the outset whether it has subject matter jurisdiction. Defendant

---

[2] Marquette Transp. Co. v. Trinity Marine Prod., Inc., No. 06-0826, 2006 WL 2349461, at *3 (E.D. La. Aug. 11, 2006) (quoting Matter of Commonwealth Oil Refining Co., Inc., 596 F.2d 1239, 1241 (5th Cir.1979)).

[3] Zhang v. Rothrock, No. CIV.A. H-05-3461, 2006 WL 213951, at *1 (S.D. Tex. Jan. 25, 2006) (quoting In re Manville Forest Products Corp., 896 F.2d 1384, 1391 (2nd Cir. 1990)).

[4] 28 U.S.C. § 1404(a).

[5] *In re* Volkswagen of Am., Inc., 545 F.3d 304, 311 (5th Cir. 2008) ("There can be no question but that the district courts have 'broad discretion in deciding whether to order a transfer.'") (quoting Balawajder v. Scott, 160 F.3d 1066, 1067 (5th Cir. 1998)).

[6] *Id.* at 315.

argues that this Court has bankruptcy jurisdiction over Plaintiff's claim but contends that the issue of jurisdiction should be decided by the bankruptcy court in the Middle District of Louisiana. In so arguing, Defendant cites to dissimilar cases concerning abstention and core/non-core proceedings.[7] It is well settled that the Court must first determine whether a claim falls within the scope of bankruptcy jurisdiction outlined in 28 U.S.C. § 1334 before considering whether the proceeding is core or non-core.[8] "[D]istrict courts have full judicial power over all matters within the scope of §§ 1334(a) and (b)."[9]

Under § 1334, district courts have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."[10] Because "arising under," "arising in a case under," and "related to" conjunctively define the scope of jurisdiction, "it is necessary only to determine whether a matter is at least 'related to' the bankruptcy."[11] A proceeding is "related to" a bankruptcy case if it "could *conceivably* have any effect on the estate being administered in bankruptcy."[12] "'Related to' jurisdiction includes any litigation where the outcome could alter, positively or negatively, the debtor's rights, liabilities, options, or freedom of action or could influence the administration of the bankrupt estate.'"[13] "Shared facts between

---

[7] *See* D'Iberville Promenade, LLC v. CBL – D'Iberville Member, LLC, No. 1:21CV335-LG-RPM, 2022 WL 108615, at *3 (S.D. Miss. Jan. 11, 2022) (holding that "[t]he bankruptcy judge" is "in the best position to evaluate the grounds asserted for abstention.").

[8] Eubanks v. Esenjay Petroleum Corp., 152 B.R. 459, 462 (E.D. La. 1993).

[9] *Id.*

[10] 28 U.S.C. § 1334(b).

[11] *In re* Wood, 825 F.2d 90, 93 (5th Cir. 1987).

[12] *Id.* (citing Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)) (emphasis in original).

[13] *In re* KSRP, Ltd., 809 F.3d 263, 266 (5th Cir. 2015).

the third-party action and a debtor-creditor conflict do not in and of themselves suffice to make the third-party action 'related to' the bankruptcy. Moreover, judicial economy alone cannot justify a court's finding jurisdiction over an otherwise unrelated suit."[14]

A closer look at the agreements at issue is warranted in considering whether Plaintiff's claim is "related to" Kologik's bankruptcy. The GSA is between Plaintiff, Defendants, and various other parties, including Victor Trahan and Kologik. The GSA contemplates payments to Trahan after a sale of Kologik. The GSA purports to resolve all claims of all parties—but expressly excludes resolution of the dispute between Plaintiff and Trahan regarding the amount of and entitlement to the incentive bonus due from TSB to Plaintiff. In the GSA, Plaintiff and Trahan agree to submit that issue to a mediator for resolution. They also agree that TSB shall set aside $1.8 million from the proceeds it receives from the sale of Kologik in order to satisfy Plaintiff's claim to an incentive bonus. The GSA expressly provides that "payment of the $1.8 million Incentive Bonus shall be deemed a payment by TSB, such that the payment will not reduce the amounts of distributions that may be payable to members of Kologik other than TSB."[15]

The Multiparty Agreement is between Plaintiff and Defendants only. It similarly provides that TSB shall put $1.8 million in escrow from the amount it receives in the sale of Kologik in accordance with the terms of the GSA and that the amount shall be dispersed as determined by a mediator. It clarifies that the amount of Plaintiff's incentive bonus will be paid by TSB out of TSB's

---

[14] Matter of Zale Corp., 62 F.3d 746, 753–54 (5th Cir. 1995).
[15] Doc. 6-4.

share of the proceeds of the Kologik sale. The Multiparty Agreement also outlines other amounts owed to Plaintiff by TSB, such as management fees and ownership interests, and governs TSB's conduct until those amounts are paid.

Plaintiff maintains that his claim is not related to the Kologik bankruptcy because, although it is contingent on TSB's receipt of funds from the sale of Kologik, his claim is against TSB only. Indeed, Plaintiff points out that if he does not prevail in this suit, TSB will keep the amount at issue, not Kologik. And while Kologik has listed Plaintiff as a possible unsecured creditor in the bankruptcy, Plaintiff has not yet filed a proof of claim because he maintains that the debt at issue is owed by TSB, not the debtor Kologik. He argues that the amount collected by TSB from the Kologik bankruptcy is a separate issue from the division of that amount between him and TSB. He contends that the division of the amount collected will have no effect on Kologik's bankruptcy estate.

Defendant, on the other hand, argues that Plaintiff's claim seeks a portion of the bankruptcy estate. They argue that Plaintiff's claim could conceivably have an effect on Kologik's bankruptcy estate in three ways. First, they assert that the agreements do not make clear whether the incentive bonus payment will come from Kologik or TSB. This Court disagrees. The agreements make absolutely clear that "payment of the $1.8 million Incentive Bonus shall be deemed a payment by TSB," that "TSB shall put in escrow $1,800,000 of the Kologik Sale proceeds TSB receives," and that "the Incentive Bonus will be paid by TSB out of TSB's share of the proceeds of a Kologik Sale."[16] The

---

[16] Docs. 6-2, 6-4.

agreements do not leave any ambiguity on this point, and this Court does not see a good faith argument otherwise. Indeed, the source of Plaintiff's alleged entitlement to a bonus is his management of TSB and TSB's successful exit of its investment in Kologik.[17] Defendant has not explained how Kologik might be responsible for paying that amount.

Second, Defendant states that, pursuant to "the operating agreements of Kologik and TSB as well as the relevant loan, security, and guarantee agreements," they may have indemnification rights against Kologik's bankruptcy estate if Plaintiff is successful in his claim in this case. Defendant only provides the Court with the operating agreement of Kologik, which provides for indemnification of its members for acts made on behalf of the company.[18] However, the Fifth Circuit has held that contingent indemnification claims do not satisfy the "related to" test for bankruptcy jurisdiction.[19] It has explained that:

> A third party action which does not directly involve a debtor in bankruptcy is not related to the bankruptcy, but is, at best, a precursor to a claim against the debtor. . . . The judgment against a non-debtor defendant would not automatically create liability for the debtor because the non-debtor would be required to actually bring an action against the debtor to recover. Thus, "related to" jurisdiction would not come into play until a litigant brought a direct claim under bankruptcy jurisdiction based on the result of the prior judgment."[20]

Accordingly, this argument too fails.

---

[17] Doc. 1-3.

[18] This Court questions whether this would apply to TSB's own agreement to compensate its member–manager.

[19] Coward v. AC & S., Inc., 91 F. App'x 919, 923–24 (5th Cir. 2004).

[20] *Id.*

7

Finally, Defendant argues that Plaintiff's claim could give Plaintiff a lien against the proceeds of the sale of Kologik's assets. Defendant does not explain this contention. The agreements make clear that Plaintiff's claim is to a portion of the amount that TSB receives from the sale of Kologik, not for a portion of Kologik's assets. Defendant has not shown how the outcome of this litigation would bind Kologik or "determine its rights, liabilities, options or freedom of action."[21] Accordingly, Defendant has not carried their burden to show that this Court has subject matter jurisdiction over Plaintiff's claims.

## CONCLUSION

For the foregoing reasons, Defendant TSB's Motion is **DENIED**. This matter is **REMANDED** for lack of subject matter jurisdiction.

New Orleans, Louisiana this 6th day of December, 2024.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[21] Charles Schwab & Co. Inc. v. Girod LoanCo, LLC, No. CV 19-13099, 2020 WL 3056397, at *4 (E.D. La. June 9, 2020).

8